IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| SHIRLEY BARKSDALE,<br>Plaintiff, | ) | CASE NO. 4:04CV00008 |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br>Defendant, | ) | By: B. Waugh Crigler<br>U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's November 30, 1998 application for a period of disability, disability insurance benefits and supplemental security income benefits under the Social Security Act (Act), as amended, 42 U.S.C.§§ 416, 423 and 1381 *et seq.*, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render a report to the presiding District Judge setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will recommend that an order enter REVERSING the Commissioner's final decision, GRANTING judgment to the plaintiff and RECOMMITTING the case solely to calculate and pay proper benefits.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge (Law Judge) found that plaintiff, who was 47 years old at the time, was insured for disability benefits through December 31, 2003. (R. 19, 24.) The Law Judge

1

found that plaintiff, whose past relevant work was as a certified nurses aide, suffered a severe obstructive pulmonary disease, hypertensive coronary artery disease, obesity and a bipolar disorder. (R. 24.) However, he was of the view that none of plaintiff's impairments, alone or in combination, met or equaled any listed impairment, but that they were severe enough to disable her from her past relevant work. (*Id.*) Further finding that plaintiff's testimony about her limitations was not totally credible, and finding that her "personal functioning" was not impaired when taking medications, he concluded that plaintiff was able to perform sedentary work so long as she avoided lifting more than five pounds, avoided social interaction and temperature extremes. (R. 21-24.) By application of the Medical-Vocational Guidelines as to plaintiff's exertional limitations, and by reference to some of the evidence offered by a vocational expert (VE), the Law Judge concluded that there were jobs available in the economy for the plaintiff. (R. 25.) Consequently, the Law Judge determined that plaintiff was not disabled under the Act.

Plaintiff appealed the Law Judge's decision to the Appeals Council. While the case was on administrative appeal, plaintiff submitted additional evidence to the Council. (R. 292-295.) The Appeals Council determined there was no basis to review the Law Judge's decision and denied review. (R. 6-8.) Thus, the Council adopted the Law Judge's decision as a final decision of the Commissioner, and this action ensued.

The Commissioner regulatorily is granted some latitude in resolving inconsistencies in evidence and the court reviews the Law Judge's factual determinations only for clear error. 20 C.F.R. §§ 404.1527 and 416.927; *See also, Estep v. Richardson*, 459 F.2d 1015, 1017 (4th Cir. 1972). In the end, if the Law Judge's resolution of the conflicts in the evidence is supported by substantial evidence then the Commissioner's final decision must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966). However, whether substantial evidence supports the

Commissioner's decision and whether the correct legal standards were applied are questions of law. *See,* 42 U.S.C.A. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 390; *Hancock v. Barnhart, supra.; Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990).

With this in mind, the Commissioner may not reject plaintiff's statements about the intensity of subjective symptoms, such as pain, "solely because objective medical evidence does not substantiate [plaintiff's] statements." 20 C.F.R.§§ 404.1529(c)(2) and 416.929(c)(2). No objective evidence of the symptom itself is required, but objective medical evidence must exist of a medically determinable impairment which could reasonably be expected to produce the symptom alleged. 20 C.F.R. §§ 404.1529(a)-(b) and 416.929(a)-(b); *See also, Foster v. Heckler,* 780 F.2d 1125 (4th Cir. 1986). Furthermore, where, as here, the claimant has proved an inability to perform his/her past relevant work, the burden shifts to the Commissioner to produce evidence that alternate gainful activity is available in significant numbers to the claimant. 20 C.F.R. §§ 404.1520 and 416.920. Where non-exertional limitations are present, the Commissioner is not permitted to discharge that burden by relying on the grids, but instead, she must present vocational evidence in order for the testimony of a VE. 20 C.F.R. §§ 404,1569 and 416.969, Appendix II, § 200.00(e). For vocational evidence to be relevant, the Law Judge must properly set out in hypothetical questions to the VE all of plaintiff's impairments and their effects which are shown by the substantial evidence. *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989). Otherwise, the Commissioner will not be seen has having discharged her sequential burden.

The court begins its review with the Law Judge's finding that plaintiff is unable to perform her past relevant semiskilled heavy work as a nurses aide and, necessarily, that she would not be able to perform work in the medium and light categories because ~~he also~~ ~~determined~~ she was capable of performing only ~~less~~ than a full range of sedentary work. (R. 24-25.)

3

Moreover, plaintiff's impairments undeniably produce non-exertional limitations on her functional capacity, and even the DDS examining clinical psychologist noted in her report of June 10, 1999, that plaintiff had a "significant history for multiple inpatient stays for bipolar disorder." (R. 227.) Another DDS examining consultant, Leovigil Pambid, M.D., in a teledictated report of August 11, 1999, noted all the impairments found by the Law Judge, including plaintiff's bipolar disorder ("nerve problem" for which she had been hospitalized some 15 times, and opined that plaintiff's "ability to perform work-related activities are impaired as *mentioned above.*" (R. 252-253.) The impairments this consulting examiner mentions were those related by the plaintiff during the examination, including "pressing-type chest pain" in her chest when performing daily activities, shortness of breath and panting when walking a normal pace, and fainting when walking a fast pace. (R. 250-251.) In addition to these work-related impairments, this examiner opined plaintiff also "does have problems with mental impairments" for which she was being actively treated at the time of his examination. (R. 253.)

The Law Judge essentially concedes that plaintiff's maladies limit her to lifting and carrying more than 5 pounds and her respiratory disease restricts her from being exposed to certain environmental conditions. (R. 21.) He also seems to concede that plaintiff "mood disorder has resulted in her inability to engage in frequent interpersonal relationships," though he also believed she retained the ability to have "some degree of social interaction." (*Id.*) He never explains what that interaction might be in light of her inability to have frequent interpersonal relationships.

Moreover, the Law Judge gives almost dispositive credit to a Psychiatric Review Technique and attached Mental Residual Functional Capacities Assessment filled out by a non-examining, non-treating DDS consultant which, on the one hand, seems to recognize the severity

4

of plaintiff's mental status, but, on the other, offers opinions which less restrictive than that which could be adduced from the DDS examining evidence. (R. 256-267.) Both this non-examining consultant and the Law Judge, in his final analysis, seem to focus on plaintiff's daily activities in reaching their conclusions that plaintiff is capable of performing gainful work so long as she takes her medications. The examples used by the DDS reviewer were plaintiff's fixing meals, running errands, attending church and going out of the house on a daily basis. (R. 267.) The Law Judge chose to rely on plaintiff's crocheting, cooking, cleaning her home and "many other" unspecified "activities that require concentration" to support his conclusion that plaintiff could perform in a vocational environment. (R. 21.) The Law Judge then found plaintiff's social activities were only moderately impaired, but, and interestingly so, that she "no more than often" lost the ability to concentrate. (*Id.*) Frankly, the undersigned believes that while the Law Judge was soft-pedaling the degree of plaintiff's impairments, he actually spoke the truth of what the record shows, namely that plaintiff has a significant problem which, in fact, often prevents her from concentrating.

The point to be made here is that the Law Judge's determination of plaintiff's residual functional capacity turns, in substantial part, on how he interpreted plaintiff's daily activities. It is the undersigned considered view that unless a claimant's daily activities have vocational relevance, i.e. they are of the kind and quality which would be performed in a vocational setting under the production demands of the work category, then they cannot be relied on by the Law Judge to find a capacity for work-related activity. This is exactly what occurred here, to the exclusion, it might be added, of the evidence offered by the DDS examining doctors.

Of course, the importance of the Law Judge's findings lies in the vocational testimony, for if the plaintiff suffered an inability to concentrate, none of the jobs identified by the VE in

5

Case 4:04-cv-00008-JLK-BWC Document 8 Filed 11/19/04 Page 5 of 6 Pageid#: 11

response to the Law Judge more restrictive hypothetical questions would be available to her. (R. 67.) Moreover, any job the VE identified would require regular attendance as well as contact with coworkers, supervisors and the public. (R. 66-69.) The substantial evidence fails to reveal that plaintiff could maintain either.

In the end, the undersigned does not believe that the Commissioner discharged her sequential burden by the substantial evidence. For these reasons, the undersigned, RECOMMENDS that an order enter REVERSING the Commissioner's final decision, GRANTING judgment to the plaintiff and RECOMMITTING the case for the sole purpose of calculating and paying proper benefits.

The Clerk is directed to immediately transmit the record in this case to the Hon. Jackson L. Kiser, Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C.A. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/
United States Magistrate Judge

DATE: November 19, 2004